# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JOHN LOFTUS, individually and on behalf of all others similarly situated, | Case No. 2:21-cv-11809-MAG-DRG |
| Plaintiff, | Hon. Mark A. Goldsmith |
| | Mag. Judge David R. Grand |
| v. | |
| OUTSIDE INTEGRATED MEDIA, LLC, | **PLAINTIFF'S MOTION** |
| Defendant. | |

## PLAINTIFF'S UNOPPOSED MOTION FOR
## ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARD

The undersigned counsel certifies that counsel communicated with opposing counsel via email on Thursday, June 23, 2022, explaining the nature of the relief to be sought by way of this Motion and seeking concurrence in the relief; Defendant's counsel replied on the same day on June 23, 2022 and does not oppose this Motion and the relief requested herein.

Plaintiff respectfully requests that the Court (1) approve attorneys' fees, costs, and expenses in the amount of 35% of the settlement fund, or $349,442.42; (2) grant Mr. Loftus a service award of $5,000 in recognition of his efforts on behalf of the class; and (3) award such other and further relief as the Court deems reasonable and just.

I, E. Powell Miller, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

Dated: June 24, 2022                    Respectfully submitted,

                                        By: */s/ E. Powell Miller*
                                        One of Plaintiff's Attorneys

                                        E. Powell Miller (P39487)

Sharon S. Almonrode (P33938)
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248.841.2200
epm@millerlawpc.com
ssa@millerlawpc.com

Joseph I. Marchese (P85862)
jmarchese@bursor.com
Philip L. Fraietta (P85228)
pfraietta@bursor.com
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, New York 10019
Tel: 646.837.7150
Fax: 212.989.9163

Frank S. Hedin
fhedin@hedinhall.com
Arun G. Ravindran
aravindran@hedinhall.com
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
Fax: 305.200.8801

*Class Counsel*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JOHN LOFTUS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OUTSIDE INTEGRATED MEDIA, LLC,<br><br>Defendant. | Case No. 2:21-cv-11809-MAG-DRG<br><br>Hon. Mark A. Goldsmith<br><br>Mag. Judge David R. Grand<br><br>**PLAINTIFF'S BRIEF** |

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR
## ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARD

## STATEMENT OF ISSUES PRESENTED

1.     Whether this Court should award Class Counsel attorneys' fees, costs, and expenses in the amount of $349,442.42 – 35% of the $998,406.92 common fund created for the benefit of the class – to compensate and reimburse them for achieving a substantial cash benefit for a class of consumers under Michigan's Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-1715, *et seq*?

**Plaintiff's Answer: Yes.**

2.     Whether this Court should award Plaintiff John Loftus a service award of $5,000, in recognition of his zealous efforts on behalf of the class, which have demanded his involvement in this case for almost a year?

**Plaintiff's Answer: Yes.**

**CONTROLLING AND MOST APPROPRIATE AUTHORITIES**

- Fed. R. Civ. P. 23(h)

- *Gascho v. Global Fitness Holdings, LLC*,
  822 F.3d 269 (6th Cir. 2016)

- *In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003)

- *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008)

- *In re Rio Hair Naturalizer Prods. Liab. Litig.*,
  No. MDL 1055, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996)

- *Ramey v. Cincinnati Enquirer, Inc.*,
  508 F.2d 1188 (6th Cir. 1974)

# TABLE OF CONTENTS

**PAGE(S)**

I.     INTRODUCTION ...................................................................................1

II.    BACKGROUND ...................................................................................3

     A.    Michigan's Preservation of Personal Privacy Act ................................3

     B.    Plaintiff's Allegations.................................................................4

     C.    The Litigation and Work Performed to Benefit the Class ...................5

III.   SUMMARY OF THE SETTLEMENT.............................................9

IV.    THE REQUESTED SERVICE AWARD REFLECTS MR.
       LOFTUS'S ACTIVE INVOLVEMENT HERE AND SHOULD BE
       APPROVED .........................................................................................9

V.     THE REQUESTED ATTORNEYS' FEES AND COSTS ARE
       REASONABLE AND SHOULD BE APPROVED ...................................11

     A.    The Percentage Method Should Be Used to Calculate
       Fees.................................................................................................11

     B.    The Reasonableness of the Requested Fees Is Supported
       by This Circuit's Six-Factor Test.........................................................16

          1.    Class Counsel Have Secured a Valuable Benefit
       for the Class .................................................................................18

          2.    Society Has a Stake in Incentivizing the Pursuit of
       Complex Consumer Privacy Litigation ...................................19

          3.    Class Counsel Took the Case on a Contingent
       Basis, Confronting Significant Risk of
       Nonpayment .................................................................................21

          4.    The Complexity of the Litigation Supports the
       Requested Fees.............................................................................25

5.      The Parties Are Both Represented by Skilled
        Counsel ......................................................................................26

6.      The Value of the Legal Services Performed on an
        Hourly Basis Is Reasonable ......................................................28

VI.     CONCLUSION ..............................................................................33

# TABLE OF AUTHORITIES

**PAGE(S)**

## Cases

*Arp v. Hohla & Wyss Enterprises, LLC*,
  No. 3:18-CV-119, 2020 WL 6498956 (S.D. Ohio Nov. 5, 2020) ..... 28, 29, 32, 33
*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) .................................................................................17
*Boelter v. Advance Magazine Publishers Inc.*,
  210 F. Supp. 3d 579 (S.D.N.Y. 2016)...................................................5
*Boelter v. Hearst Commc'ns, Inc.*,
  192 F. Supp. 3d 427 (S.D.N.Y. 2016)...................................................5
*Boelter v. Hearst Commc'ns, Inc.*,
  269 F. Supp. 3d 172 (S.D.N.Y. 2017)...................................................6
*Bowling v. Pfizer, Inc.*,
  102 F.3d 777 (6th Cir. 1996).................................................................16
*Brandenburg v. Cousin Vinny's Pizza, LLC*,
  No. 3:16-CV-516, 2019 WL 6310376 (S.D. Ohio Nov. 25, 2019) ............... 31, 32
*Dick v. Sprint Commc'ns Co. L.P.*,
  297 F.R.D. 283 (W.D. Ky. 2014)..........................................................18
*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. 2014) .........................................................27
*Edwards v. Hearst Commc'ns, Inc.*,
  2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016) .........................................6
*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .............................................................................20
*Est. of McConnell v. EUBA Corp.*,
  No. 3:18-CV-00355, 2021 WL 1966062 (S.D. Ohio May 17, 2021)...................28
*Fournier v. PFS Invs., Inc.*,
  997 F. Supp. 828 (E.D. Mich. 1998)......................................... 13, 14, 29
*Fox v. Cty. of Saginaw*,
  No. 19-cv-11887, 2020 WL 6118487 (E.D. Mich. Oct. 16, 2020)......................27
*Gascho v. Global Fitness Holdings, LLC*,
  822 F.3d 269 (6th Cir. 2016)........................................................ passim
*Gaskill v. Gordon*,
  160 F.3d 361 (7th Cir. 1998).................................................................14
*Goodell v. Charter Commc'ns, LLC*,
  No. 08-cv-512-bbc, 2010 WL 3259349 (W.D. Wis. Aug. 17, 2010)...................23
*Groover v. Prisoner Transportation Servs., LLC*,
  No. 15-CV-61902, 2019 WL 3974143 (S.D. Fla. Aug. 22, 2019) ......................27

*Hadix v. Johnson*,
   322 F.3d 895 (6th Cir. 2003)......................................................................8
*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ................................................................................28
*Higgins v. TV Guide Magazine, LLC*,
   No. 15-cv-13769-SJM (E.D. Mich. Dec. 19, 2018)....................................16, 17
*Hillson v. Kelly Servs. Inc.*,
   No. 2:15-CV-10803, 2017 WL 3446596 (E.D. Mich. Aug. 11, 2017)................15
*Horton v. GameStop, Corp.*,
   380 F. Supp. 3d 679 (W.D. Mich. 2018) ......................................................6
*In re Cardinal Health Inc. Sec. Litigations*,
   528 F. Supp. 2d 752 (S.D. Ohio 2007). ......................................................32
*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) ...................................................... passim
*In re Cardizem CD Antitrust Litig.*,
   No. 99-md-1278 (E.D. Mich. Nov, 26, 2002).................................................15
*In re CMS Energy ERISA Litig.*,
   No. 02-72834, 2006 WL 2109499 (E.D. Mich. June 27, 2006) .......................10
*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008) ...................................................... passim
*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
   No. MDL 1055, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996)............. 19, 21, 26
*In re S. Ohio Corr. Facility*,
   173 F.R.D. 205 (S.D. Ohio 1997) ..............................................................17
*In re Synthroid Mktg. Litig.*,
   325 F.3d 974 (7th Cir. 2003).....................................................................24
*In re Telectronics Pacing Sys., Inc.*,
   137 F. Supp. 2d 985 (S.D. Ohio 2001) .......................................................25
*Isabel v. City of Memphis*,
   404 F.3d 404 (6th Cir. 2005).....................................................................28
*Kelly v. Corrigan*,
   890 F. Supp. 2d 778 (E.D. Mich. 2012).......................................................15
*Kinder v. Meredith Corp.*,
   No. 14-cv-11284-TLL (E.D. Mich. May 18, 2016).................................. 3, 16, 17
*Kirchoff v. Flynn*,
   786 F.2d 320 (7th Cir. 2006).....................................................................12
*Kogan v. AIMCO Fox Chase L.P.*,
   193 F.R.D. 496 (E.D. Mich. 2000) .............................................................21

*Kokoszki v. Playboy Enterprises, Inc.*,
  No. 19-cv-10302-BAF (E.D. Mich. Aug. 19, 2020) ................................ 10, 16, 17
*Kolinek v. Walgreen Co.*,
  311 F.R.D. 4831 (N.D. Ill. 2015) .................................................................... 12, 14
*Lasalle Town Houses Coop Assoc. v. City of Detroit*,
  No. 4:12-cv-13747, 2016 WL 1223354 (E.D. Mich. Mar. 29, 2016) ...................10
*Love v. Gannett Co. Inc.*,
  No. 3:19-CV-296-BJB-RSE, 2021 WL 4352800 (W.D. Ky. Sept. 24, 2021) ......28
*Luczak v. Nat'l Beverage Corp.*,
  No. 0:18-CV-61631-KMM, 2018 WL 9847842 (S.D. Fla. Oct. 12, 2018) ..........27
*Lyngaas v. Curaden AG*,
  No. 17-10910, 2020 WL 5249203 (E.D. Mich. Sept. 3, 2020) (Goldsmith, J.) ...12
*Mathias v. Accor Econ. Lodging, Inc.*,
  347 F.3d 672 (7th Cir. 2003) (Posner, J.) .............................................................17
*Moeller v. American Media, Inc.*,
  235 F. Supp. 3d 868 (E.D. Mich. 2017) .................................................................5
*Moeller v. American Media, Inc.*,
  No. 16-cv-11367-JEL (E.D. Mich. Sept. 28, 2017) ...................................... 10, 17
*Moulton v. U.S. Steel Corp.*,
  581 F.3d 344 (6th Cir. 2009) ................................................................................16
*Mullins v. S. Ohio Pizza, Inc.*,
  No. 1:17-cv-426, 2019 WL 275711 (S.D. Ohio Jan. 18, 2019) ...........................31
*N.Y.S. Teachers' Ret. Sys. v. Gen. Motors Co.*,
  315 F.R.D. 226 (E.D. Mich. 2016) .......................................................................14
*Nilsen v. York Cty.*,
  400 F. Supp. 2d 266 (D. Me. 2005) ......................................................................12
*Palmer Park Square, LLC v. Scottsdale Insurance Company*,
  878 F.3d 530 (6th Cir. 2017) ..................................................................................7
*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010) ..............................................................................................15
*Perlin v. Time Inc.*,
  No. 16-cv-10635-GCS (E.D. Mich. Oct. 15, 2018) ..........................................3, 17
*Pratt v. Outdoor Sportsman Group, Inc.*,
  No. 1:21-cv-11404, 2022 WL 469075 (E.D. Mich. Feb. 15, 2022) ......................7
*Ramey v. Cincinnati Enquirer, Inc.*,
  508 F.2d 1188 (6th Cir. 1974) ..............................................................................16
*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) ............................................................................. 11, 12
*Shane Grp., Inc. v. BCBS of Mich.*,
  2015 WL 1498888 (E.D. Mich. Mar. 31, 2015) ...................................................16

*Silverman v. Motorola Solutions, Inc.*,
   739 F.3d 956, 958 (7th Cir. 2013)..........................................................24
*Stanley v. U.S. Steel Co.*,
   No. 04-74654, 2009 WL 4646647 (E.D. Mich. Dec. 8, 2009)............................21
*Van Horn v. Nationwide Prop. & Cas. Ins. Co.*,
   436 F. App'x 496 (6th Cir. 2011) ...................................................... 28, 29
*Wise v. Popoff*,
   835 F. Supp. 977 (E.D. Mich. 1993)......................................................13

## Statutes

M.C.L. § 445.1712 ...........................................................................3
M.C.L. § 445.1715 ...........................................................................4

## Rules

Fed. R. Civ. P. 23 ...........................................................................5
Fed. R. Civ. P. 23(h) ......................................................................11
Fed. R. Civ. P. 26 ...........................................................................8
MCR 3.501(A)(5)...........................................................................5

## I.    INTRODUCTION

The Settlement negotiated by Plaintiff and Class Counsel in this action brought under the Michigan Preservation of Personal Privacy Act (the "PPPA"), and preliminarily approved by this Court on May 5, 2022, represents an excellent result for the Settlement Class. The Settlement – which is the result of a full-day mediation with The Honorable James F. Holderman (Ret.), formerly of the Northern District of Illinois and now a mediator at JAMS (Chicago) – creates a $998,406.92 non-reversionary cash Settlement Fund,[1] from which every Settlement Class Member (except for those who submit requests for exclusion from the Settlement) will *automatically* receive (*i.e.*, without having to file a claim form) a *pro rata* cash payment of approximately $50. Moreover, unlike prior PPPA settlements, this Settlement does not require Settlement Class Members to submit claim forms, and instead provides *automatic* payments to every class member who does not exclude him or herself. Thus, unlike in past PPPA settlements where 80%-90% of settlement class members did not submit claim forms and thus did not receive cash payments, in this case every non-excluded Settlement Class member will receive a monetary

---

[1] At preliminary approval, the Parties stated that the Settlement Fund would be $850,000, but that number was calculated using an estimated class size of 10,298 persons. Since that time, the Parties and the Settlement Administrator have determined that there are actually 12,096 persons in the Settlement Class. Therefore, pursuant to Paragraph 1.34 of the Settlement, the Settlement Fund was increased to $998,406.92, or by $82.54 per additional Settlement Class Member.

1

payment by check upon final approval of the proposed Settlement.

Obtaining this unprecedented relief did not come easily. Plaintiff shouldered significant risk, conducted a lengthy pre-filing investigation, engaged in both informal discovery, and conducted contentious, arm's-length negotiations, including the mediation with Judge Holderman. Most notably, Defendant has argued that Plaintiff's claims are time-barred pursuant to a three-year statute of limitations, and at the time of the Settlement, no court had ever held that a longer statute of limitations would apply to PPPA claims.

As detailed below, the result obtained in this case, and the efficiency with which Class Counsel obtained it, would not have been possible without the significant investments of time and other resources by Class Counsel in the prosecution of PPPA actions over the better part of the past decade, which provided counsel with the knowledge, experience, and well-developed body of PPPA jurisprudence necessary to achieve this Settlement.  Class Counsel's use of their accumulated knowledge and experience, in a niche area of law, to efficiently obtain this Settlement weighs strongly in favor of the reasonableness of the requested fee.

Accordingly, Plaintiff respectfully requests pursuant to Federal Rule of Civil Procedure 23(h) that the Court approve attorneys' fees, costs, and expenses of 35% of the settlement fund, or $349,442.42, as well as a service award of $5,000 for Plaintiff for his service as class representative. The requested fee is an equal

2

percentage to that approved by other courts in this District in PPPA class action settlements. *See, e.g.*, *Kinder v. Meredith Corp.*, 1:14-cv-11284 ECF No. 81, PageID.2766-2772 (E.D. Mich. May 18, 2016) (awarding 35% of $7.5 million settlement fund resolving plaintiff's PPPA claim that paid approximately $50 per claimant). And it is a <u>lesser</u> percentage than other courts in this District have recently approved. *See Perlin v. Time Inc.*, No. 2:16-cv-10635 ECF No. 55, PageID.1087-1095 (E.D. Mich. Oct. 15, 2018) (awarding 40% of $7.4 million settlement fund resolving plaintiff's PPPA claim that paid between $25-$50 per claimant).

For these reasons, and as explained further below, this Court should approve the requested fees, costs, expenses, and service award.

## II.   BACKGROUND

A brief summary of the PPPA, the litigation performed by Class Counsel for the Settlement Class' benefit, and the beneficial terms of the Settlement provide necessary context to the reasonableness of the requested fee and service award.

### A.   Michigan's Preservation of Personal Privacy Act

The Michigan legislature passed the PPPA "to preserve personal privacy with respect to the purchase, rental, or borrowing of written materials, sound recordings, and video recordings." First Amended Complaint ("FAC") (ECF No. 4). As such, the PPPA, under M.C.L. § 445.1712, provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail … books or other written materials…

3

> shall not disclose to any person, other than the customer, a record
> or information concerning the purchase … of those materials by
> a customer that indicates the identity of the customer.

*Id.* To enforce the statute, the PPPA authorizes civil actions and provides for the recovery of statutory damages in the amount of $5,000, plus costs and reasonable attorney fees. *See* M.C.L. § 445.1715.

### B.    Plaintiff's Allegations

Outside Integrated Media, LLC ("Outside") is an international media company that publishes *Outside* and other magazines. FAC ¶ 10. Plaintiff alleges that before July 30, 2016, Defendant disclosed information related to its customers' magazine subscription histories and personal reading habits. *Id.* ¶¶ 1-2, 5-8, 41-48. Plaintiff alleges that Defendant traded its customers' protected reading information with certain third parties – including data mining companies – in exchange for other demographic and lifestyle data that such companies have already gathered (or "mined") on each subscriber. *Id.* ¶¶ 5, 41-43. Plaintiff alleges that Defendant then "enhanced" its own customer profiles with this additional data, and then allegedly disclosed the enhanced information to other unrelated third parties for a profit. *Id.*

Plaintiff further alleges that no matter how consumers subscribed (*i.e.*, via postcard, over the phone, or on Defendant's website), Defendant's customers never provided consent to disclose information related to their magazine subscriptions to third parties. *Id.* ¶¶ 5, 45-46. Plaintiff claims that this is because – during the

4

subscription process – customers are not required to consent to any terms or policies informing them of Defendant's alleged disclosure practices. *Id.*

### C.     The Litigation and Work Performed to Benefit the Class

A background of the work performed by Class Counsel leading up to the filing of this lawsuit is helpful to better understand the fee request.

Beginning in 2015, Class Counsel began investigating and litigating cases against publishers for alleged violations of the PPPA. The theory of liability was novel. Although a few other cases had been filed against publishers, none had progressed through class certification or summary judgment. Declaration of Philip L. Fraietta in Support of Plaintiff's Motion for Attorneys' Fees, Costs, and Expenses ("Fraietta Decl.") at ¶ 4 (Ex. 1). Despite the uncertainty, Class Counsel took on the cases and litigated numerous issues of first impression under the statute, including, but not limited to: (i) whether an alleged violation of the statute was sufficient to confer Article III standing; (ii) whether the statute violated the First Amendment on its face or as applied; (iii) whether plaintiffs could pursue class action claims for statutory damages in federal court under Fed. R. Civ. P. 23 in light of MCR 3.501(A)(5); and (iv) whether a 2016 amendment to the statute applied retroactively. *See, e.g.*, *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016); *Boelter v. Advance Magazine Publishers Inc.*, 210 F. Supp. 3d 579 (S.D.N.Y. 2016); *Moeller v. American Media, Inc.*, 235 F. Supp. 3d 868 (E.D. Mich. 2017). *Id.* ¶ 4.

Thereafter, Class Counsel conducted vigorous discovery, which included in-depth research into a number of data industry practices, including data appending and data cooperatives, and ultimately third-party discovery from those companies. Through that discovery, Class Counsel amassed a wealth of institutional knowledge regarding the data industry. *Id.* ¶ 6; Declaration of Frank S. Hedin in Support of Plaintiff's Motion for Attorneys' Fees, Costs, and Expenses ¶ 21 ("Hedin Decl.") (Ex. 2). Class Counsel won a motion for summary judgment for the named plaintiff in the *Hearst* case. *See Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017). The *Hearst* summary judgment victory provided a roadmap to liability for publishers based on the aforementioned data industry practices. Fraietta Decl. ¶ 7.

Class Counsel then successfully argued that the amended version of the PPPA does not apply to claims that accrued prior to its effective date of July 31, 2016. *Horton v. GameStop, Corp.*, 380 F. Supp. 3d 679, 683 (W.D. Mich. 2018) (holding amended version of the PPPA does not apply to claims filed after its effective date of July 31, 2016 where the alleged disclosures occurred prior to the effective date). Hedin Decl. ¶¶ 13-14; Fraietta Decl. ¶ 8. Finally, in the aforementioned PPPA litigation it was assumed that PPPA cases were governed by a three-year statute of limitations. Hedin Decl. ¶ 16; Fraietta Decl. ¶ 9; *see, e.g.*, *Hearst*, 269 F. Supp. 3d at 172; *Edwards v. Hearst Commc'ns, Inc.*, 2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016). Nonetheless, shortly before filing this lawsuit, Class Counsel recognized that

6

the Sixth Circuit's opinion in *Palmer Park Square, LLC v. Scottsdale Insurance Company*, 878 F.3d 530 (6th Cir. 2017), as well as relevant Michigan state authorities, arguably provided a basis for applying a six-year limitation period to PPPA claims, and therefore may provide an avenue for class recovery under the original PPPA. Hedin Decl. ¶ 17; Fraietta Decl. ¶ 9. Thus, despite the uncertainty regarding the statute of limitations, and after extensive additional pre-suit investigative work, the *Pratt* action was followed by dozens of additional PPPA actions filed by my firm and co-counsel – including the instant matter (discussed further below) – each of which depended on the application of the six-year limitation period. Hedin Decl. ¶ 18; Fraietta Decl. ¶ 9.  At the time of mediation in this matter, a fully briefed motion to dismiss pertaining to the statute of limitations was pending in *Pratt*, and no court had yet decided the question. Hedin Decl. ¶ 19; Fraietta Decl. ¶ 9.  Two weeks after the Parties negotiated the Settlement in this case, the court in *Pratt* denied the defendant's motion to dismiss on statute of limitations grounds – marking the first judicial decision on this issue. *Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-CV-11404, 2022 WL 469075 (E.D. Mich. Feb. 15, 2022).

Plaintiff filed this class action lawsuit on August 4, 2021, in the United States Court for the Eastern District of Michigan. (ECF No. 1). Plaintiff subsequently filed a First Amended Complaint on August 18, 2021. (ECF No. 4).

7

From the outset of the case, the Parties engaged in direct communication, and as part of their obligation under Fed. R. Civ. P. 26, discussed the prospect of resolution. *See* Fraietta Decl. ¶ 13; Hedin Decl. ¶ 23. Those discussions led to an agreement between the Parties to engage in mediation, which the Parties agreed would take place before The Honorable James F. Holderman (Ret.), who is a neutral at JAMS in Chicago. Fraietta Decl. ¶ 14; Hedin Decl. ¶ 23. As part of the mediation, the Parties exchanged informal discovery, including on issues such as the size and scope of the putative class. Fraietta Decl. ¶ 15; Hedin Decl. ¶ 24. Given that the information exchanged would have contained the same information produced in formal discovery related to issues of class certification and summary judgment, the Parties had sufficient information to assess the strengths and weaknesses of the claims and defenses. Fraietta Decl. ¶ 16; Hedin Decl. ¶¶ 23-24. The mediation took place on February 1, 2022, and lasted the entire day. At the conclusion of the mediation, the Parties reached agreement on all material terms of a class action settlement and executed a term sheet. Fraietta Decl. ¶ 18; Hedin Decl. ¶ 24. In the weeks following, the Parties negotiated and finalized the full-form Settlement Agreement (the "Settlement" or the "Agreement"), which is attached to the Fraietta Declaration as Exhibit A. *Id.* ¶ 3; Hedin Decl. ¶ 25-27. On May 5, 2022, the Court granted preliminary approval to the Settlement. *Id.* ¶ 22 (citing ECF No. 27). During

8

and since that time, Class Counsel has worked with the Settlement Administrator to administer the Notice Plan. Fraietta Decl. ¶¶ 28-30; Hedin Decl. ¶¶ 34-35.

## III.   SUMMARY OF THE SETTLEMENT

Class Counsel's efforts resulted in an excellent settlement. Fraietta Decl. ¶ 19; Hedin Decl. ¶¶ 29, 33. The Settlement provides an exceptional result by delivering immediate cash benefit to approximately 12,096 persons who purchased a subscription directly from the publisher of *Backpacker*, *Clean Eating*, *Climbing*, *Gym Climber*, *Outside*, *Oxygen*, *Rock and Ice*, *SKI*, *Trail Runner*, *Triathlete*, *VeloNews*, *Women's Running*, or *Yoga Journal* for delivery to a Michigan street address, and who subscribed to such publication between August 4, 2015, and July 30, 2016. *Id.* The Settlement creates a non-reversionary $998,406.92 Settlement Fund, from which class members will *automatically* be mailed a check for a *pro rata* cash payment, which Class Counsel estimates will be approximately $50. Fraietta Decl. ¶ 19; Hedin Decl. ¶ 26; *see also* Fraietta Decl. Ex. A, Class Action Settlement Agreement ("Agreement") ¶¶ 1.34, 2.1.

## IV.   THE REQUESTED SERVICE AWARD REFLECTS MR. LOFTUS'S ACTIVE INVOLVEMENT HERE AND SHOULD BE APPROVED

Service awards are frequently awarded in common-fund cases within this Circuit. *See Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir. 2003). The approval of an incentive award is examined through the following factors: (1) the actions taken to protect the class's interests and whether that resulted in a substantial benefit to the

class; (2) the financial risk the class representative assumed; and (3) the time and effort the class representative dedicated. *Lasalle Town Houses Coop Assoc. v. City of Detroit*, No. 4:12-cv-13747, 2016 WL 1223354, at *7 (E.D. Mich. Mar. 29, 2016). Based on these factors, a service award of $5,000 for the Plaintiff is reasonable. It is equal to the amount awarded to the class representatives in other settlements such as *Moeller*, No. 5:16-cv-11367 ECF No. 42, PageID.898, at ¶ 16 (E.D. Mich. Sept. 28, 2017), and *Kokoszki*, No. 2:19-cv-10302, ECF No. 38, PageID.1066 at ¶ 16 (E.D. Mich. Aug. 19, 2020). It is also a fraction of amounts awarded in comparable settlements. *See, e.g.*, *In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 WL 2109499, at *3 (E.D. Mich. June 27, 2006) (awarding class representatives $15,000).

As documented in his declaration, Mr. Loftus spent considerable time protecting the interests of the class through his involvement here. *See generally* Declaration of John Loftus (Ex. 3); Hedin Decl. ¶¶ 42-44. Mr. Loftus assisted Class Counsel in investigating his claims, by detailing his magazine subscription histories and aiding in drafting the complaint. *Id.* ¶¶ 3-4; Hedin Decl. ¶ 43. Further, Mr. Loftus preserved documents that would need to be turned over to the Defendant in discovery. *Id.* ¶ 6; Hedin Decl. ¶ 43. Moreover, Mr. Loftus was actively consulted and engaged throughout the settlement process. *Id.* ¶¶ 4-7; Hedin Decl. ¶ 43.

As such, this Service Award is fair, reasonable, and should be approved.

## V.    THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE AND SHOULD BE APPROVED

The requested fee and cost award of $349,442.42, representing 35% of the cash common fund, is reasonable and merits approval. Under Federal Rule of Civil Procedure 23(h), courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). Here, the Settlement Agreement between the Parties provides that Class Counsel may petition the Court for an award of attorneys' fees, costs, and expenses up to 35% of the Settlement Fund. Agreement ¶ 8.1.

As set forth below, the Court should calculate Class Counsel's fee using the "percentage-of-the-fund" method and find that the requested award of 35% of the Settlement Fund is reasonable and well supported by applicable Sixth Circuit law.

### A.    The Percentage Method Should Be Used to Calculate Fees

"When awarding attorney fees in a class action, district courts generally have discretion to choose whether to calculate fees based on the lodestar method—multiplying the number of hours reasonably expended by a reasonable hourly rate—or based on the percentage method—awarding class counsel a percentage of the monies recovered." *Lyngaas v. Curaden AG*, No. 17-10910, 2020 WL 5249203, at *1 (E.D. Mich. Sept. 3, 2020) (Goldsmith, J.) (citing *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016)). "As the two methods measure the fairness of the fee with respect to different desired outcomes, it is necessary that

11

district courts be permitted to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Lyngaas*, 2020 WL 5249203, at *1 (citing *Gascho*, 822 F.3d at 279 and *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993) (internal quotation marks omitted)).

In "choosing between the percentage and lodestar approaches," courts "look to the calculation method most commonly used in the marketplace at the time such a negotiation would have occurred." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 500-01 (N.D. Ill. 2015); *see also, e.g.*, *Nilsen v. York Cty.*, 400 F. Supp. 2d 266, 278 (D. Me. 2005) ("There is good reason for using a market-oriented approach. If a consumer wanted to determine a reasonable plumber's, mechanic's or dentist's fee, the consumer would have to look to the market. Why should lawyers be different?").

With respect to consumer class actions in particular, where "the normal practice . . . is to negotiate a fee arrangement based on a percentage of the plaintiffs' ultimate recovery," *Kolinek*, 311 F.R.D. at 501, the federal judiciary is in near unanimous agreement that the percentage-of-the-fund approach best yields the fair market price for the services provided by counsel to the class for purposes of determining a reasonable attorneys' fee award at settlement. *See Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 2006) ("When the prevailing method of compensating lawyers for similar services is the contingent fee, then the contingent fee *is* the

market rate.") (internal quotations omitted, emphasis in original); *see, e.g.*, *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003) ("This Court's decision to apply the percentage-of-the-fund method is consistent with the majority trend[.]"). This is especially true where, as in this case, a settlement establishes a non-reversionary common fund for the benefit of settlement class members. *See Fournier v. PFS Invs., Inc.*, 997 F. Supp. 828, 831-32 (E.D. Mich. 1998) ("The lodestar method should arguably be avoided in situations where such a common fund exists because it does not adequately acknowledge (1) the result achieved or (2) the special skill of the attorney(s) in obtaining that result. Courts and commentators have been skeptical of applying the formula in common fund cases. For these reasons, many courts have strayed from using lodestar in common fund cases and moved towards the percentage of the fund method which allows for a more accurate approximation of a reasonable award for fees.") (collecting cases); *Wise v. Popoff*, 835 F. Supp. 977, 980 (E.D. Mich. 1993) (same).

Thus, in recent non-reversionary "common fund" cases such as this, district courts of the Sixth Circuit have applied the percentage-of-the-fund method in determining a reasonable attorneys' fee award. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 502 (E.D. Mich. 2008) (noting that "the Sixth Circuit has observed a 'trend towards adoption of a percentage of the fund method in common fund cases'") (citations omitted).

13

This Court should likewise award Class Counsel a fee based on the percentage-of-the-fund method. The percent-of-the-fund method best replicates the *ex ante* market value of the services that Class Counsel provided to the Settlement Class. It is not just the typical method used in contingency-fee cases generally, *see Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998), but it is also the means by which an informed Settlement Class and Class counsel would have established counsel's fee at the outset of the litigation. *See Kolinek*, 311 F.R.D. at 501 (in consumer class-action litigation, "the normal practice [is] to negotiate a fee arrangement based on a percentage of the plaintiffs' ultimate recovery"). The percentage-of-the-fund method also better aligns Class Counsel's interests with those of the Settlement Class because it bases the fee on the results the lawyers achieve for their clients rather than on the number of motions they file, documents they review, or hours they work, and it avoids some of the problems the lodestar-times-multiplier method can foster (such as encouraging counsel to delay resolution of the case when an early resolution may be in their clients' best interests). *N.Y.S. Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 243 (E.D. Mich. 2016) (explaining that while "[t]he lodestar method better accounts for the amount of work done . . . the percentage of the fund method more accurately reflects the results achieved") (citation omitted). And it is also simpler to apply. *See also, e.g., Fournier*, 997 F. Supp. at 832 (noting that the percentage-of-the-fund method provides the

14

"benefit" of "readily ascertainable fee amounts"); *Hillson v. Kelly Servs. Inc.*, No. 2:15-cv-10803, 2017 WL 3446596, at *2 (E.D. Mich. Aug. 11, 2017) (stating that "[t]he percentage-of-recovery approach is 'easy to calculate'" and "'establishes reasonable expectations on the part of plaintiffs' attorneys.'") (citation omitted).[2] As another court of this district aptly explained:

> The lodestar [method] remains difficult and burdensome to apply, and it positively encourages counsel to run up the bill, expending hours that are of no benefit to the class. Moreover, use of the lodestar may result in undercompensation of talented attorneys. Experienced practitioners know that a highly qualified and dedicated attorney may do more for a class in an hour than another attorney could do in ten. The lodestar can end up prejudicing lawyers who are more efficient with a less expenditure of time.

*In re Cardizem CD Antitrust Litig.*, No. 99-md-1278 at 18 (E.D. Mich. Nov. 26, 2002)[3]; *Di Giacomo v. Plains All Am. Pipeline*, No. CIV.A.H-99-4137, 2001 WL 34633373, at *6 (S.D. Tex. Dec. 19, 2001) (same) (citation omitted).

For precisely these reasons, the percentage-of-the-fund method (rather than the lodestar method) has been used to calculate a reasonable attorneys' fee award in every other PPPA class action to have settled in this District. *See, e.g.*, *Kinder v.*

---

[2] The lodestar approach would create a perverse incentive for Class Counsel to reject or delay accepting the Settlement now before the Court merely to bill more hours through a litigation strategy that would be more wasteful, unnecessary, and risky.

[3] By contrast, the lodestar approach is most appropriately applied in federal fee-shifting cases. *See, e.g.*, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010); *Kelly v. Corrigan*, 890 F. Supp. 2d 778, 787 (E.D. Mich. 2012).

*Meredith Corp.*, No. 1:14-cv-11284 ECF No. 81, PageID.2771 ¶ 14 (E.D. Mich. May 18, 2016); *Higgins v. TV Guide Magazine, LLC*, No. 2:15-cv-13769 ECF No. 81, PageID.1201 (E.D. Mich. Dec. 19, 2018); *Kokoszki v. Playboy Enterprises, Inc.*, No. 2:19-cv-10302 ECF No. 38, PageID.1066 at ¶ 15 (E.D. Mich. Aug. 19, 2020).

Accordingly, consistent with the recent trend in the Sixth Circuit, including the fee decisions in the PPPA cases cited above, this Could should calculate Class Counsel's fee using the percentage-of-the-fund method.

### B. The Reasonableness of the Requested Fees and Costs Is Supported by This Circuit's Six-Factor Test

The Sixth Circuit has articulated six factors that are "germane" to determining the reasonableness of a requested percentage to award as attorneys' fees: (1) the value of the benefit to the class; (2) society's stake in rewarding attorneys who produce the settlement's benefits, to maintain an incentive to others; (3) whether the work was performed on a contingent fee basis; (4) the complexity of the litigation; (5) the skill and standing of counsel on both sides; and (6) the value of the legal services performed on an hourly basis. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974); *Gascho*, 822 F.3d at 280 (describing these factors as "germane" to the fee inquiry, and citing *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996).

A "reasonable" fee in common-fund case typically ranges "from 20 to 50 percent." *Shane Grp. v. BCBS of Mich.*, 2015 WL 1498888, at *15 (E.D. Mich. Mar.

31, 2015) ; *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 217 (S.D. Ohio 1997), *rev'd on other grounds*, 24 F. App'x 520 (6th Cir. 2001) ("[t]ypically, the percentage awarded ranges from 20 to 50 percent of the common fund"); *see also Mathias v. Accor Econ. Lodging, Inc.*, 347 F.3d 672, 677 (7th Cir. 2003) (Posner, J.) (referring to the "usual 33-40 percent contingent fee" charged by plaintiff's lawyers). The amount awarded is calculated as percentage "from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Gascho*, 822 F.3d at 282 (calculating the percentage, as "[a]ttorney's fees are the numerator" and "the dollar amount of the Total Benefit to the class (including the benefit to class members, attorney's fees, and [potentially] the costs of administration)" is the denominator). As aforementioned, Courts in this District have awarded 35% of common funds in PPPA cases. *See, e.g.*, *Kinder v. Meredith Corp.*, No. 1:14-cv-11284 ECF No. 81, PageID.2771 ¶ 14 (E.D. Mich. May 18, 2016); *Moeller v. American Media, Inc.*, No. 5:16-cv-11367 ECF No. 42, PageID.897-898 at ¶ 15 (E.D. Mich. Sept. 28, 2017); *Higgins v. TV Guide Magazine, LLC*, No. 2:15-cv-13769 ECF No. 81, PageID.1201 (E.D. Mich. Dec. 19, 2018); *Kokoszki v. Playboy Enterprises, Inc.*, No. 2:19-cv-10302 ECF No. 38, PageID.1066 at ¶ 15 (E.D. Mich. Aug. 19, 2020). And one Court in this District has awarded 40%. *See Perlin v. Time Inc.*, No. 2:16-cv-10635, ECF No. 55, PageID.1093 at ¶ 14 (E.D. Mich. Oct. 15, 2018).

Under the circumstances of this case – wherein Class Counsel an excellent

result early in the litigation despite a substantial risk that the case was time-barred – the requested 35% award is reasonable.

### 1.   Class Counsel Have Secured A Valuable Benefit For The Class

The value of the benefit to the class is the most important factor in assessing the reasonableness of fees. *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 299 (W.D. Ky. 2014) (citation omitted); *In re Delphi*, 248 F.R.D. at 503 (describing result achieved as "primary factor"). Assessing the overall value includes consideration of both tangible and intangible benefits. *See Gascho*, 822 F.3d at 282 (requiring "appropriate consideration" of "cash and noncash settlement components" in assessing the total benefits to the class). The risk of continued litigation can also be considered in relation to the value of the benefit to the class under this factor. *Dick*, 297 F.R.D. at 299.

The Settlement here provides for an excellent recovery. Specifically, the Settlement creates a $998,406.92 non-reversionary cash settlement fund for the benefit of 12,096 Settlement Class Members. After deducting notice and administration costs, and the requested attorneys' fees and service award, those class members will *automatically* be mailed a check for approximately $50 each. The Settlement therefore compares favorably to those that came before it under the PPPA, wherein class members were required to file claims to receive payment and 80-90% of class members accordingly did not receive any payment at all.

18

Weighed against the risks of continued litigation – including the Court's eventual decision on the statute of limitations and then class certification, additional fact and expert discovery necessary for trial, motions for summary judgment, and potentially other obstacles that could strip the class of any recovery – the value of the immediate monetary recovery that the Settlement affords thus supports the reasonableness of the requested attorneys' fees. The first factor is well satisfied.

### 2. Society Has a Stake in Incentivizing the Pursuit of Complex Consumer Privacy Litigation

Society has a strong stake in rewarding attorneys who produce the type of benefits achieved by the settlement here. *See In re Cardizem*, 218 F.R.D. at 533; *see also Gascho*, 822 F.3d at 287 ("Consumer class actions . . . have value to society … as deterrents to unlawful behavior . . . and as private law enforcement regimes that free public sector resources."). It is thus in society's interest to encourage litigation that protects important consumer privacy rights that would not otherwise be safeguarded. *See In re Rio Hair Naturalizer Prods. Liab. Litig.*, No. MDL 1055, 1996 WL 780512, at *17 (E.D. Mich. Dec. 20, 1996) ("Without compensation to those who are willing to undertake the inherent complexities and unknowns of consumer class action litigation, enforcement of the federal and state consumer protection laws would be jeopardized."); *In re Cardizem*, 218 F.R.D. at 534 ("Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions . . . benefits society."). When individual class members seek relatively

19

small statutory damages, "[e]conomic reality dictates that [their] suit proceed as a class action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974).

Society has a vital interest in incentivizing lawyers to bring complex litigation necessary to protect the privacy of Michiganders' personal reading choices. Class actions are the most realistic means of safeguarding this privacy under the PPPA, especially given the fact that consumers are often unaware that their privacy rights are being violated (here, Plaintiff alleged Defendant secretly disclosed its customers' personal reading information). The alternative here would have been no enforcement at all, and Defendant's allegedly unlawful conduct would have continued unabated.

Finally, the Settlement Class's reaction to the requested fee award also confirms its fairness and reasonableness. *See In re Delphi*, 248 F.R.D. at 504 ("The Class's overwhelming favorable response lends further support to the conclusion that the requested fee award is fair and reasonable."). Notice was directly disseminated to every Settlement Class member by postal mail and/or email. Those notices specifically stated that Class Counsel intends to apply for a fee of up to 35% of the Settlement Fund. Since the dissemination of notice, not a single Settlement Class Member has submitted an objection to the Settlement, nor have any Settlement Class Members requested exclusion from the Settlement. Thus, the Settlement Class, as a microcosm of society as a whole, has recognized the societal value of this litigation by giving the Settlement a resounding stamp of approval.

This factor thus supports the requested award.

### 3. Class Counsel Took the Case on a Contingent Basis, Confronting Significant Risk of Nonpayment

Undertaking an action on a contingency basis lends additional support to the reasonableness of a requested fee award. *See In re Cardizem*, 218 F.R.D. at 533; *Stanley v. U.S. Steel Co.*, No. 04-74654, 2009 WL 4646647, at *3 (E.D. Mich. Dec. 8, 2009) ("Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award."). When attorneys invest significant time and resources in pursuing the litigation, in spite of the risk they will not be compensated, this factor is generally satisfied. *In re Rio*, 1996 WL 780512, at *18; *Kogan v. AIMCO Fox Chase L.P.*, 193 F.R.D. 496, 504 (E.D. Mich. 2000). The contingent nature of the case is amplified where class counsel face a formidable defendant. *See In re Cardizem*, 218 F.R.D. at 533.

Class Counsel pursued the action purely on a contingency basis. Fraietta Decl. ¶ 31; Hedin Decl. ¶ 36. Class Counsel conducted an extensive pre-filing investigation into the relevant facts and legal issues, which was informed by the vast experience and expertise they had accumulated during their prosecution of numerous other PPPA litigations and guided by the well-established body of PPPA jurisprudence those efforts had produced. Hedin Decl. ¶¶ 12-20, 21, 37. And for almost a year during the litigation, Class Counsel invested significant time, effort, and resources to the litigation without any compensation. Hedin Decl. ¶ 36.

Cognizant of the risk of nonpayment, Class Counsel nonetheless embarked on a fact-intensive investigation of Defendant's practices, filed the case, and exchanged informal discovery. Fraietta ¶¶ 6, 11, 17; Hedin Decl. ¶¶ 21-24. Class Counsel also paid for and participated in a full-day mediation with Judge Holderman. Fraietta ¶¶ 14, 18; Hedin Decl. ¶¶ 25, 40. Class Counsel fronted this investment of time and resources, despite the significant risk of nonpayment inherent in this case. Fraietta Decl. ¶¶ 9, 25; Hedin Decl. ¶¶ 36, 40. And given the defenses mounted by Defendant—led by highly qualified defense counsel, who regularly defend complex class action cases—success on the legal issues presented here was far from certain. Fraietta Decl. ¶ 25; Hedin Decl. ¶¶ 31-32.

Even if Plaintiff survived Defendant's motion to dismiss on statute of limitations grounds, Plaintiff would still have to overcome numerous defenses, including, but not limited to: (i) the PPPA does not prohibit the disclosure of the magazine subscriptions information at issue (because the third-party recipients of the disclosures are Defendant's agents), (ii) that Defendant also provided appropriate notice of its practices, and (iii) that the PPPA does not apply to subscriptions that were not sold by Defendant "at retail," as is required to come under the scope of the statute. Fraietta Decl. ¶ 26; Hedin Decl. ¶ 32.

In considering the reasonableness of a fee request in a contingency class action settlement, courts consider how the legal market would have assessed the case's risk

at its inception and, in turn, how the market's risk assessment would have affected a hypothetical *ex ante* fee negotiation between counsel and potential client. *See Goodell v. Charter Commc'ns, LLC*, No. 08-cv-512-bbc, 2010 WL 3259349, at \*1 (W.D. Wis. Aug. 17, 2010) ("The question is not how risky the case looks when it is at an end but how the market would have assessed the risks at the outset."). Here, Class Counsel began their pre-filing investigation into this matter (as well as the other "wave three" PPPA matters outlined herein) in early 2021, at which time there were no other PPPA claims being prosecuted against Defendant (or any other companies for that matter) by any other attorneys in the country. *See* Hedin Decl. ¶ 21. At the time Plaintiff initiated this action, a three-year limitation period had been applied in every prior PPPA case to date, and Plaintiff's claims here depended on Class Counsel successfully arguing that a six-year limitation period actually applied. *See id.* ¶¶ 17-20 & 30-31. In light of this significant, threshold risk on the merits, it appears this litigation was viewed as simply too risky to pursue by other counsel. Although Class Counsel and Plaintiff nonetheless plowed forward and negotiated the Settlement presently before the Court for approval, in determining whether to meet Class Counsel's fee at the outset of this case, the Settlement Class would have known that no other firm had come forward to offer its services in this matter to the class or individual participants. Moreover, after Class Counsel commenced the litigation, no other counsel came forward to compete with Class Counsel for control

of the case, to propose to the Court that it be appointed lead counsel at a lower fee structure, or to offer to share in the case's risk and expense with Class Counsel.

The market, thus, judged this to be a high-risk case. Competition for control is brisk when lawyers think cases have significant potential to generate large recoveries and significant attorney's fees. *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979 (7th Cir. 2003). "Lack of competition not only implies a higher fee but also suggests that most members of the . . . bar saw this litigation as too risky for their practices." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013). That is exactly the case here. Other firms chose to pass on offering representation to Class members here because they found it not worth the risk, firmly establishing that Class Counsel would have been able to obtain the requested Fee Award of 35% of the settlement fund in an *ex ante* negotiation with the Settlement Class.

Moreover, despite the many serious risks of non-recovery to the Settlement Class and thus non-payment to Class Counsel described above, both at the outset and for the duration of the adversarial proceedings, Class Counsel nevertheless expended a significant amount of attorney time and expenses investigating, prosecuting, and resolving the claims alleged in this case without any guarantee of reimbursement. *See* Fraietta Decl. ¶¶ 6, 17, 28-30; Hedin Decl. ¶¶ 30-33, 36-40. As a result of the work Class Counsel devoted to this litigation, their law firms were forced to forgo representing consumers in other matters that they otherwise would

have taken on. *See* Fraietta Decl. ¶ 31; Hedin Decl. ¶ 39. Class Counsel should be rewarded for accepting Plaintiff's case and devoting such substantial resources investigating and prosecuting it on behalf of the Settlement Class in the face of the foregoing risks.

Simply put, this litigation presented numerous risks of non-recovery to the Settlement Class and thus non-payment to Class Counsel at the outset, and the requested Fee Award appropriately and reasonably compensates Class Counsel for assuming such risks by embarking on lengthy, time-consuming, and expensive litigation for the benefit of the Settlement Class.

### 4.   The Complexity of the Litigation Supports the Requested Fees

The complexity of the litigation reinforces the reasonableness of the requested fee award. *In re Cardizem*, 218 F.R.D. at 533. "[M]ost class actions are inherently complex." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). This case is no exception. It involved multiple layers of factual complexity, much of which was obscured at the outset due to Defendant's alleged concealment of its practices from consumers. This required extensive preliminary investigation into Defendant's business practices, its methods of data collection and aggregation, and the nature of its relationships with various third-party data companies.

The case involved complex legal issues as well. Defendant challenged the merits of Plaintiff's claims and contended that the case was time-barred, and was

prepared to assert numerous additional defenses to the merits and the propriety of class certification of a complex nature. *See* Hedin Decl. ¶¶ 31-32.

And because this case involved complex factual and legal questions under the PPPA, this complexity further supports the reasonableness of the requested fees.

### 5.   The Parties Are Both Represented By Skilled Counsel

The skill and standing of counsel on both sides, including their experience and professionalism, also validates the reasonableness of a requested fee award. *In re Rio*, 1996 WL 780512, at *18. When counsel for both parties have significant experience, "[t]he ability of [counsel] to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested." *In re Delphi*, 248 F.R.D. at 504.

Class Counsel are well-respected attorneys with significant experience litigating class actions of similar size, scope, and complexity to the instant action. Fraietta Decl. ¶¶ 5-9, 34-36; Hedin Decl. ¶¶ 2-20; Declaration of E. Powell Miller in Support of Plaintiff's Motion for Attorneys' Fees, Costs, Expenses, and Service Award ¶¶ 4-6 ("Miller Decl.") (Ex. 4). They regularly engage in major complex litigation involving consumer privacy, including recent PPPA cases. *See* Fraietta Decl. ¶¶ 5-9, 34-36; Hedin Decl. ¶¶ 2-20; Miller Decl. ¶¶ 4-6.

Moreover, Class Counsel has been recognized by courts across the country for their expertise. *See* Firm Resumes of Bursor & Fisher, P.A., Hedin Hall LLP,

and The Miller Law Firm, P.C. (attached to the respective Declarations); *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. 2014) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. . . . The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008."); *Luczak v. Nat'l Beverage Corp.*, No. 0:18-CV-61631-KMM, 2018 WL 9847842, at *2 (S.D. Fla. Oct. 12, 2018) ("Hedin Hall LLP . . . has extensive experience in class actions[.]"); *Groover v. Prisoner Transportation Servs., LLC*, No. 15-CV-61902, 2019 WL 3974143, at *2 (S.D. Fla. Aug. 22, 2019) ("Counsel [at Hedin Hall LLP] provided excellent and thorough representation in a case that was exceptionally time-consuming."); *Fox v. Cty. of Saginaw*, No. 19-cv-11887, 2020 WL 6118487, at *11 (E.D. Mich. Oct. 16, 2020) ("counsel have substantial experience litigating class actions and novel constitutional questions").

As aforementioned, Class Counsel faced formidable defense counsel in this action. Defendant was represented by an internationally renowned defense firm who regularly practices in this District – Dentons US LLP. Dentons has a strong track record defending class action cases, including PPPA cases. *See* Hedin Decl. ¶ 32. And Defendant made clear that, but for the Settlement, it would dispute its liability and assert multiple defenses. *See id.*

27

Given the skill and standing of counsel on both sides, the reasonableness of the requested fee award is apparent.

### 6.  The Value of the Legal Services Performed on an Hourly Basis Is Reasonable

The sixth and final factor assesses the value of the legal services performed on an hourly basis. *In re Cardizem*, 218 F.R.D. at 533. The value of the legal services performed on an hourly basis is also known as the "lodestar." *See Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). In this case, as discussed above, the percentage-of-the-fund method, not the lodestar method, is the appropriate method for computing a reasonable fee in this case. Thus, the only potential use for counsel's lodestar in this case would be to "cross-check" that amount with the amount of fees requested by counsel as a percentage of the fund. Even then, however, a cross-check of counsel's lodestar is "not required." *Arp v. Hohla & Wyss Enterprises, LLC*, No. 3:18-cv-119, 2020 WL 6498956, at *7 (S.D. Ohio Nov. 5, 2020); *Love v. Gannett Co. Inc.*, No. 3:19-cv-296-BJB-RSE, 2021 WL 4352800, at *6 (W.D. Ky. Sept. 24, 2021) (noting that a "cross-check isn't required," and citing *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 501 (6th Cir. 2011)); *Est. of McConnell v. EUBA Corp.*, No. 3:18-CV-00355, 2021 WL 1966062, at *6 (S.D. Ohio May 17, 2021) (noting that, in considering the *Ramey* factors, "a lodestar cross-check" is "not required"). Rather, where the percentage-of-the-fund method is used to compute counsel's fee,

a lodestar cross-check is optional and entirely discretionary. *See Van Horn*, 436 F. App'x at 501 (finding that district courts have complete discretion when deciding to calculate attorneys' fees based on the percentage-of-the-fund or lodestar methods, and thus a cross-check analysis is optional). *In re Delphi*, 248 F.R.D. at 503 (applying percentage-of-the-fund-method in awarding fees in common-fund settlement, without addressing the *Ramey* factor pertaining to "the value of the services on an hourly basis"); *Fournier*, 997 F. Supp. at 832-33 (same); *Arp*, 2020 WL 6498956, at *7-8 (same).

In this case, like in *Delphi*, *Fournier*, and *Arp*, the circumstances giving rise to the Settlement demonstrate that there is no need to "cross-check" the requested fee (35% of the Settlement Fund) with the lodestar value of the time Class Counsel expended on the prosecution of solely this case. As outlined above, the non-reversionary common-fund Settlement achieved in this case is a direct result of Class Counsel's multi-year investigation into certain disclosure practices in effect in segments of the publishing industry in 2015-16, Class Counsel's extensive months-long analysis of the law governing the applicable statute of limitations (and other threshold issues), and the significant time (several thousands of hours) and other resources that Class Counsel expended prosecuting related litigations and developing favorable bodies of PPPA jurisprudence on issues of critical importance to the claims alleged in this case. *See* Fraietta Decl. ¶¶ 4-10; Hedin Decl. ¶¶ 12-32.

29

These extensive efforts included methodically reviewing historical data cards found in cached Internet archives to identify companies whose practices violated the PPPA, Hedin Decl. ¶ 21, and litigating (and prevailing on) such critically important issues as the retroactivity of the Michigan legislature's amendment to the PPPA that became effective on July 31, 2016 and the applicability of the catch-all six-year limitation period to these claims. *See id.* ¶¶ 11-20; Fraietta Decl. ¶¶ 6, 9. Thus, the Court should not view this Settlement, or even this case, in a vacuum, but rather as part of a multi-year project in which counsel devoted substantial time, money, and other resources for the benefit of Michigan consumers (among them the members of the Settlement Class) – all on a contingency basis and without any guarantee of recovering fees for their work or being reimbursed their out-of-pocket expenses. *See* Hedin Decl. ¶ 37 ("The result we obtained in this case, and the efficiency with which we obtained it, would not have been possible without the significant investments of time and other resources that we made towards the prosecution of the PPPA actions outlined above over the better part of the past decade, which provided us with the knowledge, experience, and well-developed body of PPPA jurisprudence necessary to achieve this Settlement.").

In *Arp*, for example, the court awarded counsel a percentage of a common settlement fund as a fee, notwithstanding the value of counsel's lodestar expended solely in that case, based on circumstances strikingly similar to those present here.

Noting that "courts have broad discretion when it comes to awarding a reasonable fee and when weighing the *Ramey* factors," the court in *Arp* explained why "a lodestar cross-check is not required" in all cases:

> This case [is] an example of why [] discretion is important: the lodestar in this case does not tell the whole story.
>
> What the lodestar in this case does not reflect is Class Counsel's work in other delivery driver cases that directly benefited the class in this case. . . . Although this case involves delivery drivers at a sandwich restaurant rather than a pizza restaurant, the claims are the same. In another wage and hour delivery driver case involving substantially similar issues, a court in this district held that Biller & Kimble "established an expertise in 'pizza delivery driver' litigation, having expended thousands of hours on similar cases which informed and enhanced their representation of Plaintiff here." *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 WL 275711, at *5 (S.D. Ohio Jan. 18, 2019); [also citing *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376 (S.D. Ohio Nov. 25, 2019)]. A firm's expertise in a niche area provides important context when analyzing the reasonableness of a fees. For example, Class Counsel's success on a specific type of case or specific issue augments their ability to obtain a favorable result in cases of the same type.
>
> It would be inequitable for a court to reduce a fee award based on a lodestar cross-check without considering a law firm's work other cases raising the same or similar issues. That work may, as it did here, substantially enhance the result Class Counsel is able to achieve. This is true for several reasons, including that (1) successfully litigating a particular issue may improve the settlement prospects of cases raising the same issue, (2) developing expertise in a specific niche improves the firm's ability to effectively litigate within that niche, and (3) the work product from one case can be used in a case raising the same issue, resulting

> in value that is not adequately reflected in a lodestar calculation.
>
> These factors weigh in favor of and confirm the appropriateness of what courts in this district already do: base common fund fee awards in wage and hour cases on a percentage-of-the-fund. In most cases, the percentage-of-the-fund approach automatically factors into the award any enhancement to the settlement derived from Class Counsel's work in similar cases. The "percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class." *In re Cardinal Health Inc. Sec. Litigations*, 528 F. Supp. 2d [752, 762 (S.D. Ohio 2007)].
>
> Thus, as this Court previously held, a lodestar cross-check is not required. [citing *Brandenburg*]. In cases that involve the issues described above, a lodestar cross-check, if applied at all, should be afforded little weight. In any case, the cross-check results in an acceptable multiplier of 5.29.

*Arp*, 2020 WL 6498956, at *7-8.

Class Counsel's request for a 35% fee here rests on the exact same set of circumstances that supported awarding a percentage-of-the-fund fee in *Arp* without regard to the value of counsel's lodestar. As in *Arp*, Class Counsel should be rewarded for efficiently achieving an excellent settlement, and for negotiating a non-reversionary structure that automatically provides *meaningful* relief to all Settlement Class Members. And as explained above, this result would not have been possible without the thousands of hours of time that Class Counsel devoted, over the course of several years, to investigating the publishing industry's disclosure practices, developing the law on each of the critically important issues underlying the PPPA

claim alleged in this case, and protecting the ability of consumers to continue prosecuting these cases under the prior version of the statute. *See* Fraietta Decl. ¶¶ 4-10; Hedin Decl. ¶¶ 11-32. These hours "directly benefited the class in this case." *Arp*, 2020 WL 6498956, at \*7. When properly viewed in this context, the requested fee of 35% of the common fund is reasonable and appropriate here, regardless of the number of hours expended by counsel on the prosecution of solely this case. *See id.* ("A firm's expertise in a niche area provides important context when analyzing the reasonableness of a fee[].").

Accordingly, the final *Ramey* factor also confirms the reasonableness of the requested fee award of 35% of the Settlement Fund.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) approve attorneys' fees, costs, and expenses in the amount of 35% of the settlement fund, or $349,442.42; (2) grant Mr. Loftus a service award of $5,000 in recognition of his efforts on behalf of the class; and (3) award such other and further relief as the Court deems reasonable and just.

Dated: June 24, 2022                              Respectfully submitted,

By: */s/ E. Powell Miller*
One of Plaintiff's Attorneys

E. Powell Miller (P39487)
epm@millerlawpc.com
**THE MILLER LAW FIRM, P.C.**

33

Sharon S. Almonrode (P33938)
ssa@millerlawpc.com
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248.841.2200

Joseph I. Marchese (P85862)
jmarchese@bursor.com
Philip L. Fraietta (P85228)
pfraietta@bursor.com
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, New York 10019
Tel: 646.837.7150
Fax: 212.989.9163

Frank S. Hedin
fhedin@hedinhall.com
Arun G. Ravindran
aravindran@hedinhall.com
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
Fax: 305.200.8801

*Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, E. Powell Miller, an attorney, hereby certify that on June 24, 2022, I served

the above and foregoing *Plaintiff's Motion for Attorneys' Fees, Costs, Expenses,*

*And Service Award* on all counsel of record by filing it electronically with the Clerk

of the Court using the CM/ECF filing system.


*/s E. Powell Miller*
E. Powell Miller

1